United States Bankruptcy Court
Southern District of Texas

**ENTERED**

May 29, 2026

Nathan Ochsner, Clerk

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## GALVESTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO: 25-80378** |
| **JESUS RAFAEL ROVERO-ARRIAGA,** *et al.*, | § | |
| | § | **CHAPTER 7** |
| | § | |
| Debtors. | § | |
| | § | |
| **PRIMERICA LIFE INSURANCE COMPANY,** *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | **ADVERSARY NO. 25-8014** |
| | § | |
| **JESUS RAFAEL ROVERO-ARRIAGA,** *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

This matter comes before the Court on the motion of Defendants Jesus Rafael Rovero-Arriaga and Moibett Lynn Diaz-Evoli (together, the "Defendants" or "Debtors") to dismiss Plaintiffs Primerica Life Insurance Company ("Primerica") and Igor Rocha's (together, the "Plaintiffs") Adversary Complaint to Determine Dischargeability of Plaintiff's Claims Under 11 U.S.C. § 523(a).[1] For the reasons explained below, Defendants' Motion to Dismissed is Granted in Part and Denied in Part.

---

[1] *See* ECF No. 13; Case No. 25-08015, ECF No. 13.

## BACKGROUND

Debtors Jesus Rafael Rovero-Arriaga and Moibett Lynn Diaz-Evoli are former sales agents for Primerica.[2] As a financial services company, Primerica sells insurance, investments, and other products in the United States and Canada.[3] The Debtors began working for Primerica around September 2022 as entry-level sales representatives.[4] They sold policies together, individually, and through the Rovero Firm LLC in Houston, Texas.[5]

The Debtors' work was overseen by Plaintiff Igor Rocha, who was a Regional Vice President for Primerica when the Debtors were recruited.[6]

According to Primerica, agents are paid advanced commissions for life insurance sales during the first year of a policy.[7] If an insured cancels the policy or does not pay, Primerica recovers the advances made to the agent by charging back any remaining advanced commission which otherwise would have been earned during that first year to the agent's commission account.[8] Primerica holds back a portion of commissions as a reserve where chargebacks can be recovered.[9] If the chargebacks for an agent exceed the agent's commission balance, it will create a negative balance on the agent's account which would be owed to Primerica.[10]

On April 18, 2025, the Debtors were terminated by Primerica for allegedly failing to pay down a debt balance.[11]

---

[2] ECF No. 1 at 3.
[3] ECF No. 1 at 2.
[4] ECF No. 1 at 3.
[5] ECF No. 1 at 3.
[6] Case No. 25-08015, ECF No. 1 at 3
[7] ECF No. 1 at 2–3.
[8] ECF No. 1 at 3.
[9] ECF No. 1 at 3.
[10] ECF No. 1 at 3.
[11] ECF No. 1 at 6.

On August 18, 2025, the Debtors filed a joint voluntary petition for Chapter 7 bankruptcy relief under Title 11 of the United States Code (the "Bankruptcy Code").[12]

On December 2, 2025, Plaintiffs Primerica and Mr. Rocha each filed an Adversary Complaint to Determine Dischargeability of Plaintiff's Claims Under 11 U.S.C. § 523(a).[13] Primerica and Mr. Rocha each make three claims in their Adversary Complaints.

First, Primerica alleges false representation and actual fraud under § 523(a)(2)(A).[14] Primerica claims that the Debtors represented to Primerica that they sold insurance policies to genuine buyers but were instead selling to fictitious clients to generate advances.[15] To the extent that the Debtors sold insurance policies to actual individuals, Primerica alternatively alleges that they engaged in actual fraud by selling insurance policies to individuals they knew would not pay their premiums in full.[16]

As alleged by Primerica, Ms. Diaz initially had a lot of success selling insurance policies, and she was awarded the Million Dollar Earners' Award by Primerica at the end of 2024.[17] However, Primerica alleges that nearly all of the policies sold by the Debtors lapsed within the first year, resulting in a negative balance in the Debtors' agent accounts.[18] As of December 2, 2025, Primerica alleges the debt balance is $519,769.56.[19] The Debtors' sales were investigated and Primerica found that it was unable to verify most of the Debtors' insurance clients.[20]

---

[12] *See* Case No. 25-80378, ECF No. 1.
[13] *See* ECF No. 1; Case No. 25-08015, ECF No. 1.
[14] ECF No. 1 at 7–8.
[15] ECF No. 1 at 7.
[16] ECF No. 1 at 7.
[17] ECF No. 1 at 4.
[18] ECF No. 1 at 6.
[19] ECF No. 1 at 6.
[20] ECF No. 1 at 4–5.

Second, Primerica alleges Defendants' debt is nondischargeable pursuant to § 523(a)(2)(B).[21] Primerica alleges that the Debtors provided materially false information concerning their financial condition when applying to become agents with Primerica.[22]

Third, Primerica claims Defendants' debt is nondischargeable under § 523(a)(6).[23] Primerica alleges that the Debtors willfully and maliciously injured Primerica by creating fictitious sales of insurance policies to generate advances.[24]

On December 2, 2025, Mr. Rocha also filed an Adversary Complaint under Case No. 25-08015 which has now been consolidated into Case No. 25-08014 along with Primerica's Adversary Complaint.[25]

First, Mr. Rocha alleges fraud and false representations under § 523(a)(2)(A) related to the Debtors' alleged sales to fictitious clients or clients who did not intend to pay premiums in full.[26] According to Mr. Rocha, in October 2023, the Debtors were promoted to Regional Vice Presidents and Mr. Rocha was promoted to Senior National Sales Director.[27] Mr. Rocha alleges that as the Debtors' direct supervisor, he is liable for debts Primerica is unable to recover from the Debtors.[28]

Second, Mr. Rocha alleges false pretenses, false representation, and actual fraud under § 523(a)(2)(A) related to the alleged rent debt.[29] According to Mr. Rocha, in June 2023, the Debtors entered into a month-to-month lease agreement with Mr. Rocha for an office located at 16225 Park Ten Place, Suite 105, Houston, Texas 770084.[30] Mr. Rocha alleges that the Debtors represented to him that they would pay their rent out

---

[21] ECF No. 1 at 8–9.
[22] ECF No. 1 at 9.
[23] ECF No. 1 at 9–10.
[24] ECF No. 1 at 9.
[25] Case No. 25-08015, ECF No. 1.
[26] Case No. 25-08015, ECF No. 1 at 8–9.
[27] Case No. 25-08015, ECF No. 1 at 4.
[28] Case No. 25-08015, ECF No. 1 at 4.
[29] Case No. 25-08015, ECF No. 1 at 9–10.
[30] Case No. 25-08015, ECF No. 1 at 3–4.

of the commissions they received, without ever intending to do so.[31] Mr. Rocha also maintains that the Debtors repeatedly promised him that they would catch up on their past-due rent once the $5,000,000 in their Luxembourg accounts became available in early 2025.[32] Mr. Rocha alleges that the Debtors made representations regarding their ability to cure delinquencies they knew were false and claims that the Debtors owe him $29,000 in past-due rent.[33]

Third, Mr. Rocha claims willful and malicious injury under § 523(a)(6).[34] Mr. Rocha alleges that the Debtors willfully and maliciously injured Primerica by creating false insurance sales to generate advances which Rocha alleges he is personally liable for as Sales Director.[35] He further alleges that his claims against the Debtors are the result of Debtors' willful and malicious injury to him.[36]

On January 30, 2026, the Debtors filed Motions to Dismiss against each Plaintiffs' Adversary Complaint.[37] First, under § 523(a)(2)(A), the Debtors argue that neither Primerica nor Mr. Rocha specified what types of false pretenses, false representations, or fraud the Debtors purportedly engaged in.[38] Second, under § 523(a)(2)(B), the Debtors argue that Primerica did not allege what types of false information or false representations the Debtors purportedly provided.[39] Third, under § 523(a)(6) the Debtors argue that the Adversary Complaints fail to show how the Debtors' purported acts were willful and malicious or that Primerica or Mr. Rocha suffered any alleged injuries.[40]

---

[31] Case No. 25-08015, ECF No. 1 at 7, 9–10.
[32] Case No. 25-08015, ECF No. 1 at 7.
[33] Case No. 25-08015, ECF No. 1 at 10.
[34] Case No. 25-08015, ECF No. 1 at 10–11.
[35] Case No. 25-08015, ECF No. 1 at 10–11.
[36] Case No. 25-08015, ECF No. 1 at 11.
[37] *See* ECF No. 13; Case No. 25-08015, ECF No. 13.
[38] *See* ECF No. 13 at 7; Case No. 25-08015, ECF No. 13 at 8.
[39] ECF No. 13 at 8–9.
[40] ECF No. 13 at 10; Case No. 25-08015, ECF No. 13 at 10.

On March 20, 2026, the Plaintiffs filed a joint Response to the Defendants' Motion to Dismiss.[41]

On March 24, 2026, a hearing was held on the Defendants' Motion to Dismiss the Adversary Proceeding and the Court took the matter under advisement.[42]

## JURISDICTION

28 U.S.C. § 1334(a) provides district courts with jurisdiction over this proceeding. This proceeding has been referred to this Court under General Order 2012-6 (May 24, 2012). This Court has jurisdiction in this proceeding as it is a core proceeding which the Court can consider under 28 U.S.C. § 157(b)(2)(I). The Court has constitutional authority to enter final orders and judgments. *Stern v. Marshall*, 564 U.S. 462, 486–87 (2011). Venue is proper under 28 U.S.C. §§ 1408 and 1409.

## LEGAL STANDARD

Defendants bring the instant motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. FED. R. CIV. P. 12(b)(6). Rule 12(b)(6) is applied in this proceeding pursuant to Rule 7012(b) of the Federal Rules of Bankruptcy Procedure. FED. R. BANKR. P. 7012(b).

A Rule 12(b)(6) motion tests the sufficiency of a complaint. *See Johnson v. MHMR Auth. of Brazos Valley*, 706 F. Supp. 3d 710, 715 (S.D. Tex. 2023). In deciding a Rule 12(b)(6) motion, the Court must accept all well-plead facts in the plaintiff's motion as true and view those facts in the light most favorable to the plaintiff. *Bowlby v. City of Aberdeen*, 681 F.3d 215, 219 (5th Cir. 2012). The Court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court should ignore conclusory allegations and instead consider the factual allegations in the complaint "to determine if they plausibly suggest an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S.

---

[41] ECF No. 18.
[42] *See* ECF No. 20.

662, 681 (2009).  The plausibility standard "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements."  *S. Scrap Material Co. LLC v. ABC Ins. Co. (In re S. Scrap Material Co. LLC)*, 541 F.3d 584, 587 (5th Cir. 2008) (citation modified).

> The United States Supreme Court explains:

> A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face[]" . . . The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (citations omitted).

Further, when alleging fraud, like Plaintiff does here, Rule 9(b) requires a party "state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  FED. R. CIV. P. 9(b).  This particularity requirement generally means a claimant must provide the "who, what, when, where, and how" of the alleged fraud. *United States ex rel. Williams v. Bell Helicopter Textron Inc.*, 417 F.3d 450, 453 (5th Cir. 2005).  A complaint must specify the fraudulent statement, identify who said the statement, state when and where those statements were made, and explain why the statements were fraudulent. *See Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 564–65 (5th Cir. 2002).

## DISCUSSION

Section 523(a) of the Bankruptcy Code provides a list of various exceptions to the discharge of a debtor's debts under the Code. *See* 11 U.S.C. § 523 ("Exceptions to discharge"). Plaintiffs Primerica and Mr. Rocha filed the instant adversary case seeking a determination of nondischargeability of the claims held by them in the Debtors' bankruptcy case. The Court will discuss the sufficiency of each claim in turn.

### I.        Plaintiffs' Claims Under § 523(a)(2)(A)

Under § 523(a)(2)(A), an individual debtor is not discharged from any debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. § 523(a)(2)(A). When defining the elements of § 523(a)(2)(A) courts have generally considered actual fraud distinguishable from false pretenses and false representations. *See Recoveredge, L.P. v. Pentecost*, 44 F.3d 1284, 1292–93 (5th Cir. 1995). A representation is a "false representation or false pretense" if it is "(1) a knowing and fraudulent falsehood, (2) describing past or current facts, (3) that was relied upon by the other party." *Id.* at 1293 (citation modified). To establish a debtor committed "actual fraud" under § 523(a)(2)(A) a creditor must prove: "(1) the debtor engaged in fraudulent conduct; (2) the debtor undertook such action with wrongful intent; and (3) the creditor sustained a loss as a proximate result." *In re Jenkins*, 607 B.R. 270, 283 (Bankr. N.D. Tex. 2019).

### A.        By Primerica and Rocha Based on Alleged Fictitious Sales

Plaintiffs Primerica and Rocha allege "Debtors engaged in actual fraud by creating fictitious sales of insurance policies to generate Advances that were paid to the Debtors by Primerica."[43] Plaintiffs' complaint contains allegations that Debtors did this by creating false

---

[43] ECF No. 1 at 7.

identities and fraudulent checking accounts to purchase and pay for the life insurance policies they sold.[44] To support their contentions that Debtors engaged in fraudulent conduct, they detail an internal investigation into Debtors' sales.[45] Primerica alleges that it used an "identity verification program provided by LexisNexis® Risk Solutions, called InstantID®" that functions to match an individual's personal identifiable information ("PII") to a database covering almost 100% of U.S. adults.[46] Primerica alleges that the InstantID system flagged 99% of Debtors' business sales, meaning that the system was unable to verify 99% of the Debtors' clients.[47]

Primerica alleges its investigation revealed that the PII provided by the Debtors regarding their clients did not match their alleged clients' true identities and in some cases the alleged client appeared to be entirely fictitious.[48] Plaintiffs allege they were further unable to verify Debtors' clients' prescription histories or U.S. medical histories.[49] They allege that 90% of Debtors' clients did not have a U.S. driver's license, 80% of the client bank accounts were opened within seven days of applying for an insurance policy and most of those accounts were categorized as business accounts.[50] Plaintiffs allege they conducted reverse phone searches on a sample of Debtors' clients and were unable to verify that the phone numbers were registered to the client or anyone associated with the client.[51] Further, Plaintiffs allege that the names and addresses of Debtors' alleged clients did not match those on real property records and that when Primerica contacted a subset of property owners they told Primerica that that they had never rented or leased their property to the alleged client.[52]

---

[44] ECF No. 1 at 7.
[45] *See* ECF No. 1 at 4–5.
[46] ECF No. 1 at 4.
[47] ECF No. 1 at 4.
[48] ECF No. 1 at 4.
[49] ECF No. 1 at 5.
[50] ECF No. 1 at 5.
[51] ECF No. 1 at 5.
[52] ECF No. 1 at 5.

The Court finds that Plaintiffs' complaint contains sufficient factual allegations to support a plausible claim for relief under § 523(a)(2)(A). Plaintiffs sufficiently allege facts to support their claim that Debtor engaged in actual fraud to obtain advance compensation from Primerica. The Plaintiffs' adversary complaint sufficiently alleges Debtors engaged in fraudulent conduct by creating fictitious clients and "represent[ing] to Primerica that the insurance policies were sold to genuine buyers" despite knowing the clients were not real and that their policies would lapse.[53] The Plaintiffs assert Debtors' wrongful intent by alleging Debtors engaged in the alleged scheme to obtain advanced compensation from Primerica. Further, Plaintiffs allege they were injured by Debtors' alleged scheme by lapsed policies which resulted in a debt balance of $519,769.56. A balance of which Plaintiff Rocha would allegedly be personally liable for as Debtors' former supervisor. Thus, Plaintiffs' complaint contains sufficient factual allegations to support a plausible claim under § 523(a)(2)(A).

Furthermore, Plaintiffs complaint satisfies the particularity requirements of Rule 9(b). *See* FED. R. CIV. P. 9(b). Plaintiffs' complaint alleges the who, what, when, where, and how of Debtors' alleged fraudulent conduct. *See Bell Helicopter Textron Inc.*, 417 F.3d at 453. The complaint alleges the Debtors (the "who") engaged in a fraudulent scheme to obtain advances by selling insurance policies to fictitious clients (the "what"). It further alleges Debtors began working for Primerica in September 2022 and were subsequently promoted in October 2023 at which point it is alleged there was an uptick in Debtors' fraudulent sales because they were no longer subjected to multiple levels of oversight (the "when"). Plaintiffs allege these fraudulent representations were made through client insurance policy applications submitted to Primerica (the "where"). Finally, Plaintiffs allege Debtors conducted this scheme by creating "false identities, shell companies, and fraudulent checking accounts to purchase and pay for the life insurance policies they sold" or, in the alternative, Debtors knew the alleged clients

---

[53] ECF No. 1 at 7.

purchasing the policies did not intend to maintain the policies or pay the premiums in full (the "how"). Therefore, Plaintiffs' adversary complaint sufficiently "state[s] with particularity the circumstances constituting fraud." *See* FED. R. CIV. P. 9(b).

Accepting all of the facts in Plaintiffs' complaints as true and in the light most favorable to the Plaintiffs, the Court finds that Plaintiffs have alleged sufficient facts to support a plausible claim for relief under § 523(a)(2)(A).[54] Defendants' motion to dismiss is therefore denied as to Plaintiffs' claims under § 523(a)(2)(A), related to the alleged fictitious sales.

### B.    By Rocha Based on Rent Debt

Plaintiff Rocha further alleges claims under § 523(a)(2)(A) based on an unpaid rent debt in the amount of $29,000.[55] The complaint contends Debtors obtained a leasehold interest in Mr. Rocha's leased office space through false pretenses, false representations, or actual fraud.[56] Mr. Rocha alleges "Debtors represented to Rocha that they would pay their rent out of commissions they received, without ever intending to do so."[57] Further, he alleges Debtors "falsely represented to Rocha that they had funds in a Luxembourg account, that the funds would be available in early 2025, and that they would pay Rocha for the past-due rent when the Luxembourg funds became available."[58]

As previously stated, a fraudulent misrepresentation under § 523(a)(2)(A) is: "(1) a knowing and fraudulent falsehood, (2) describing past or current facts, (3) that was relied upon by the other party." *See Recoveredge, L.P.*, 44 F.3d at 1293 (citation modified). As to the second requirement, "a promise to perform acts in the future is not considered a  qualifying  misrepresentation  merely  because  the  promise

---

[54] Although it is unclear whether Rocha's alleged "indemnity claim is a "debt" for purposes of § 523(a)(2)(A).

[55] Case No. 25-08015, ECF No. 13 at 9–10.

[56] Case No. 25-08015, ECF No. 13 at 9.

[57] Case No. 25-08015, ECF No. 13 at 9.

[58] Case No. 25-08015, ECF No. 13 at 10.

subsequently is breached." *See In re Allison*, 960 F.2d 481, 484 (5th Cir. 1992). However, a debtor's misrepresentation may constitute a false representation within the meaning of § 523(a)(2)(A) "if, when the representation is made, the debtor has no intention of performing as promised." *Id.*

Here, Mr. Rocha's complaint merely concludes that Debtors never had an intention to pay the past due rents, but it does not provide sufficient factual allegations to support the plausibility of its assertion. Mr. Rocha's allegations that Debtors promised to pay the past due rent but failed to do so may support a breach of contract claim but does not sufficiently support his claim that Debtors never had an "intention of performing as promised." *See In re Allison*, 960 F.2d at 484. Therefore, as it relates to Mr. Rocha's § 523(a)(2)(A) claim for the rent debt, he has failed to allege sufficient facts to support a plausible claim for relief and, as a result, the motion to dismiss is granted.

## II.      Primerica's Claim Under § 523(a)(2)(B)

11 U.S.C. § 523(a)(2)(B) provides an exception to discharge for the use of a statement in writing "(i) that is materially false; (ii) respecting the debtor's or an insider's financial condition; (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and (iv) that the debtor caused to be made or published with intent to deceive." A statement is "materially false" if it "paints a substantially untruthful picture of a financial condition by misrepresenting information of the type which would normally affect the decision to grant credit." *See Kapitus Servicing, Inc. v. Keith (In re Keith)*, No. 21-60559-MMP, 2024 Bankr. LEXIS 1586, at *8 (Bankr. W.D. Tex. July 9, 2024) (quoting *In re Jordan*, 927 F.2d 221, 224 (5th Cir. 1991) (overruled on separate grounds)).

Here, Primerica's adversary complaint fails to allege sufficient facts to support a plausible claim for relief under § 523(a)(2)(B). Primerica alleges "Debtors' initial applications to become sales agents

for Primerica contained material misrepresentations."[59] Their complaint alleges "Debtors provided materially false information concerning their financial condition", but they fail to allege what information was false.[60] Other than providing mere conclusory statements restating the elements of § 523(a)(2)(B), Primerica does not provide sufficient factual allegations to support a plausible claim for relief under § 523(a)(2)(B). Therefore, the Court will dismiss Primerica's § 523(a)(2)(B) claim for a failure to state a claim upon which relief can be granted.

### III.      Plaintiffs' Claims Under § 523(a)(6)

Under § 523(a)(6) an individual debtor is not discharged from any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). A willful injury is a deliberate or intentional injury not just a deliberate or intentional act that leads to an injury. *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998). A claimant proves a willful and malicious injury if they establish the party acted with an objective substantial certainty of harm or a subjective motive to cause harm. *Miller v. J.D. Abrams Inc. (In re Miller)*, 156 F.3d 598, 606 (5th Cir. 1998).

The "objective substantial certainty prong" is a recognition that defendants rarely admit malicious intent. *See In re Smith*, 659 B.R. 500, 508 (Bankr. E.D. Tex. 2024). Thus, a court must analyze from a reasonable person's perspective "whether the defendant's actions were substantially certain to cause harm, [and] are such that the court ought to infer that the debtor's subjective intent was to inflict a willful and malicious injury on the plaintiff." *Wheeler v. Jones (In re Jones)*, 655 B.R. 884, 894 (Bankr. S.D. Tex. 2023).

As to Primerica's claims under § 523(a)(6), the Court finds that Primerica has alleged sufficient factual allegations to state a claim for relief. There are sufficient facts to support the plausibility that the

---

[59] ECF No. 1 at 8.
[60] *See* ECF No. 1 at 9.

Debtors willfully and maliciously injured Primerica. Primerica alleges conduct that was objectively substantially certain to cause them harm—the Debtors' alleged scheme to obtain advances "by creating fictitious sales of insurance policies to generate Advances that were paid to the Debtors by Primerica."[61] Accepting Primerica's allegations as true, it is plausible to infer Debtors deliberately intended to injure Primerica. Therefore, Defendants' motion to dismiss Primerica's claims under § 523 (a)(6) is denied.

Rocha's complaint, however, fails to provide sufficient factual support for the Court to infer Debtors acted with a deliberate intent to injure him. Though the complaint alleges Rocha is personally liable for any debt owed by the Debtors to Primerica, it fails to sufficiently allege that Debtors acted with an objective substantial certainty to cause him harm. Therefore, the Court finds that Rocha's complaint fails to state a claim for relief under § 523(a)(6).

## CONCLUSION

For the reasons stated above, the Court GRANTS IN PART and DENIES IN PART Defendants' Motion to Dismiss. Primerica's claim under § 523(a)(2)(B) is DISMISSED without prejudice and with leave to amend. Mr. Rocha's claim under § 523(a)(2)(A), in relation to the rent debt, and claims under § 523(a)(6) are DISMISSED without prejudice and with leave to amend. A separate order will issue.

SIGNED 05/29/2026

Alfredo R Pérez
United States Bankruptcy Judge

---

[61] ECF No. 1 at 9.